

# Missouri Court of Appeals

## Southern District

## Division One

MEADOWFRESH SOLUTIONS USA,  )
LLC, et al.,                )
                            )
    Plaintiffs-Respondents,  )
                            )
    v.                       )    No. SD35269
                            )
MAPLE GROVE FARMS, LLC,     )    Filed: September 6, 2019
a Missouri limited liability company,  )
et al.,                     )
                            )
    Defendants-Appellants.   )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Circuit Judge

### AFFIRMED

Meadowfresh Solutions USA, LLC ("Meadowfresh") brought suit against Maple

Grove Farms, LLC, Leon Rinehart, Ted Dahlstrom, Carol Dahlstrom, Curtis Hall, Lisa

Hall, Kyle Bounous, and All American Cattle Leasing, LLC (collectively, these

defendants will be referred to as "Maple Grove" unless we are speaking of an individual

1

defendant) in 19 counts.[1]  During the pendency of that action, Meadowfresh filed a motion for appointment of a receiver.  The motion was granted on June 16, 2017; however, a receiver was not appointed at that time.  The case went to a jury trial on the counts of Malicious Prosecution, Breach of Contract/Civil Conspiracy, Breach of Contract/Tortious Interference/Civil Conspiracy, and Piercing of Corporate Veil. Judgment was entered for Meadowfresh in the amount of over 7.3 million dollars, together with attorneys' fees in the amount of $488,190.96 and taxable costs in the amount of $15,340.64.  The judgment in that case is not the subject of the current appeal.[2]

The trial court then severed two counts from the prior petition, for dissolution (Count II) and for an accounting (Count XIV), as well as Meadowfresh's motion for appointment of a receiver which was previously sustained on or about June 16, 2017. Subsequently, Counts II and XIV were dismissed by Meadowfresh and the current action

---

[1] Case Number 1531-CC01018, Fifth Amended Petition:  Count I, Declaratory Judgment (Maple Grove Defendants); Count II, Dissolution of Maple Grove Farms, LLC (Maple Grove Defendants); Count III, Breach of Contract (Maple Grove Defendants); Count IV, Breach of Contract (Maple Grove Defendants); Count V, Third-Party Beneficiary Breach of Contract (Maple Grove Defendants); Count VI, Breach of Fiduciary Duties (Curtis Hall and Leon Rinehart); Count VII, Conversion (Meadowfresh Defendants and Maple Grove Defendants); Count VIII, Tortious Interference with Contract and/or Business Expectancy (Maple Grove Defendants and Meadowfresh Defendants); Count IX, Civil Conspiracy (Maple Grove Defendants, Meadowfresh Defendants); Count X, Piercing the Corporate Veil (Maple Grove Defendants and Meadowfresh Defendants); Count XI, Breach of Fiduciary Duties (Meadowfresh Defendants); Count XII, Breach of the Implied Duty of Good Faith and Fair Dealing (Maple Grove Defendants and Meadowfresh Defendants); Count XIII, Conversion (Meadowfresh Defendants); Count XIV, Action for Accounting (Maple Grove Defendants and Meadowfresh Defendants); Count XV, Abuse of Process (Maple Grove Defendants and Meadowfresh Defendants); Count XVI, Malicious Prosecution (Maple Grove Defendants and Meadowfresh Defendants); Count XVII, Defamation (Maple Grove Defendants and Meadowfresh Defendants); Count XVIII, Injurious Falsehood (Maple Grove Defendants and Meadowfresh Defendants); and Count XIX, Preliminary and Permanent Injunction (Maple Grove Defendants and Meadowfresh Defendants).

An additional third-party claim was brought.

[2] *See* companion case *Meadowfresh Solutions USA, LLC, et al. v. Maple Grove Farms, LLC, et al.*, No. SD35231, also handed down this date.

for a dissolution and accounting against the same parties was filed (case number 1731-CC01311).  It is a ruling in this lawsuit that is now on appeal.

Meadowfresh brought a Motion for Entry of Order Based on Prior Grant of Plaintiff's Motion for Appointment of Receiver (see attached Exhibit A) and further based on "subsequent and ongoing intentional conduct of Defendants that is wasting or otherwise threatening the assets of [Maple Grove]."  Maple Grove filed suggestions in opposition to the motion.  The court granted the motion on November 6, 2017, and approved the appointment of a receiver.  Per a docket entry of November 6, 2017:

> AFTER FURTHER CONSIDERATION AND REVIEW, COURT NOW OVERRULES DFTS' OBJECTIONS TO PLAINTIFF'S MOTION FOR ENTRY OF ORDER APPOINTING RECEIVER, EXCEPT AS TO THE CHARGE AND PAYMENT OF COMPENSATION OF THE RECEIVER, WHICH IS ORDERED TO BE PAID BY DFT MAPLE GROVE FARMS, LLC. COURT FINDS PLAINTIFF HAS MADE ADEQUATE SHOWING THAT EXCEPTIONAL CONDITIONS EXIST AND THUS SAID MOTION IS NOW OTHERWISE SUSTAINED, PER FORMAL ORDER SIGNED THIS DATE.

Maple Grove then sought a Motion for Order Revoking, or in the Alternative, Modifying and Changing Interlocutory Order Appointing Receiver.  That motion was denied on November 29, 2017.  Maple Grove timely brought an appeal, pursuant to section 512.020(2),[3] from the order which denied the revocation of the appointment of a receiver

---

[3] Section 512.020, RSMo 2016, states, in part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
>
> . . . .
>
> (2) Order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction[.]

on December 7, 2017. Maple Grove claims three points of error: first, on the basis that the trial court had no "authority" to grant the motion for receiver; second, the trial court erred in finding "the law of the case doctrine" applied to enter an order appointing a receiver; and third, the trial court abused its discretion by failing to take any evidence prior to appointing the receiver. We deny all three points and affirm the denial of the motion to revoke the appointment of the receiver.

## POINT I

Maple Grove claims that the prior motion for the appointment of a receiver was "abandoned prior to trial" and the court had no authority to grant the appointment of a receiver in the prior case. That is true; however, that truth does not assist Maple Grove. The trial court did not grant the appointment of a receiver in case number 1531-CC01018. Maple Grove does not present any arguments or facts to indicate that the trial court ordered the appointment of a receiver in case number 1531-CC01018, a case that was designated final and is currently the subject of a different appeal. What Maple Grove does do in this point is argue that the filing of the second cause of action is an impermissible splitting of a cause of action. That claim of error is not available to Maple Grove in this appeal, which is, by Maple Grove's own statements, an interlocutory appeal, from the denial of a revocation of the appointment of a receiver. There is no judgment, much less a final judgment, in this case. Maple Grove's first point is denied.

## POINT II

Maple Grove's second claim of error is that the trial court incorrectly used the "law of the case" from the appealed judgment in the first case to support granting a receiver in the current case. Maple Grove arrives at this conclusion by citing to the

4

transcript of November 6, 2017, in which he claims that the trial court ruled that the appointment of a receiver was decided by using "the law of the case." A fair reading of the transcript indicates that after a long discussion whether the trial court had any jurisdiction over the case at all, the trial court used the phrase "law of the case" in his direction to the parties in their argument, as set forth below.

> [Meadowfresh's attorney]: And we said before the trial ever occurred that the judge was going to hear the evidence and then make the determinations on our claims for judicial dissolution and the accounting.
>
> . . . .
>
> THE COURT: Well, [Maple Grove's attorney's] argument, as I understand it, is the fact that if it's not reflected formally before the amended judgment means those claims were abandoned and not capable of -- and they were compulsory and abandoned and not properly preserved and, therefore, I lack jurisdiction?
>
> . . . .
>
> [Meadowfresh's attorney]: . . . I can move for dissolution of the LLC for any reason whatsoever. Now that's the extreme position which is -- which is an extreme. . . . [W]e have additional bases since trial for not only moving for dissolution, but also asking for the appointment of a receiver. . . . [W]e still have brand new bases for not only dissolution, but also the appointment of a receiver in this case.
>
> THE COURT: Well, the part of his alternative argument is, you might if you refile today, but you don't have springing jurisdiction so that if you didn't have -- if I didn't have jurisdiction, then you don't – there's no such thing as after acquired jurisdiction, you didn't get it until this morning so that doesn't retroactively make it all good, so to speak.
>
> [Meadowfresh's attorney]: . . . [W]hen we have the right to bring that based on new facts[,] . . . we could still refile it tomorrow based on new facts. . . . [W]e're talking about an equitable claim that the jury could not have rendered. It's a judicial dissolution by statute, only the Court can make that determination.
>
> THE COURT: Well, I think, his point there is until -- until there -- since there was not a final judgment at the time you filed this case[.]

5

[Meadowfresh's attorney]: . . . The finality of the judgment only affects whether or not it's appealable. . . . [T]hat's an issue for the Court of Appeals to determine. . . . [B]ecause we have new facts and a new bases [sic] for filing this.

. . . .

THE COURT: All right. Understood. Thank you. [Maple Grove's attorney] . . . is it your position that an arguable splitting of a cause of action is never curable?

[Maple Grove's attorney]: It is not. . . . [I]t is akin to res judicata. . . . [A]ssume that [for the purposes of this hearing] the Court will take judicial notice of the Court's own records?

THE COURT: I will. Yes, sir.

. . . .

[Maple Grove's attorney]: . . . They split their cause of action and they are not now in a position to complain about this.

. . . .

THE COURT: . . . I'm now going to respectfully find that Judge Cordonnier's ruling and announcement in the 9-28-17 amended judgment in his case is the law of the case. . . . The Circuit Court of Greene County, through Judge Cordonnier, has already ruled that the current claims in this case were reserved by the Court and were severed. . . . [I]t is not for me to determine that is a wrongful ruling or to second guess it[.] . . . I have jurisdiction to proceed and Defendants' motion to dismiss will now be respectfully denied. We'll now proceed to Plaintiffs' motion for appointment of a receiver. I have a couple questions that I will ask counsel to include in their remarks. . . . Does his grant of that motion quote the law of the case on this issue? Is there some abandonment argument by the defendants to be made and that Defendants did not pursue it before the jury trial?

There is no indication that the trial court impermissibly relied upon the doctrine of the "law of the case" in the appointment of the receiver. The attorneys were discussing with the court whether Meadowfresh had split their cause of action, whether there was an agreement that the judge in the first case would be the judge in the second case and

6

finally whether a receiver should be appointed.  Meadowfresh argued to the trial court that there were additional factors that warranted the appointment of the receiver in addition to the factors that were addressed in the prior case.  The parties agreed that the court could take judicial notice of the prior case.  Whether Meadowfresh impermissibly split its cause of action is simply not part of this appeal.  The trial court committed no error and did not rely upon the doctrine of the "law of the case" in the appointment of the receiver.  The judgment states:

> The facts stated in the Motion are credible and said facts and subsequent proceedings (including the evidence at trial, and related verdicts and judgment) demonstrate that Plaintiff has a right to the immediate appointment of a receiver to prevent waste of, and to protect, keep, and preserve, the assets of Maple Grove Farms pursuant to Missouri Supreme Court Rule 68.02(a) and MO. REV. STAT. § 515.500 et seq[.]

Point II is denied.

POINT III

Maple Grove's third point claims that the court abused its discretion in entering an order appointing a receiver because no evidence was offered by the plaintiff nor taken by the court.  Maple Grove argues that there were only unverified assertions of counsel.  Even if Maple Grove's assertions are correct that no "evidence" was presented to the court, a finding we do not make, Maple Grove points to nothing in the record indicating that Maple Grove requested an evidentiary hearing.  "Absent request for hearing by an appropriate person or party in interest, the term notice and a hearing does not indicate a requirement for an actual hearing unless the court so orders[.]"  Section 515.505(13), RSMo Cum.Supp. 2016.  At no time, even after the order denying the motion to revoke the appointment of the receiver, did Maple Grove request an evidentiary hearing.  The trial court heard the arguments from counsel for both parties, took judicial notice of the

7

rulings/orders and Amended Judgment from the prior lawsuit and reviewed the motions and exhibits submitted in support and entered the order. We find no error. Point III is denied.

The order denying the Motion for Order Revoking, or in the Alternative, Modifying and Changing Interlocutory Order Appointing a Receiver is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J., – Concurs

Gary W. Lynch, J., – Concurs

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

# Exhibit A

IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

| | | |
|---|---|---|
| MEADOWFRESH SOLUTIONS USA, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | Case No. 1731-CC01311 |
| vs. | ) ) | |
| MAPLE GROVE FARMS, LLC, a Missouri limited liability company, LEON RINEHART, TED DAHLSTROM, CAROL DAHLSTROM, CURTIS HALL, LISA HALL, and KYLE BOUNOUS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION FOR ENTRY OF ORDER BASED ON PRIOR GRANT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER

Pursuant to MO. REV. STAT. § 515.500 *et seq*. and Missouri Rule of Civil Procedure 68.02, Plaintiff Meadowfresh Solutions USA, LLC ("Meadowfresh") hereby moves the Court for entry of the proposed Order, attached as **Exhibit A**, appointing J. Michael Bridges as receiver for Defendant Maple Grove Farms, LLC ("MGF") based on the prior grant of Meadowfresh's motion to appoint a receiver at the expense of the individual Defendants (in Case No. 1531-CC01018 before the Honorable Judge Cordonnier) and subsequent and ongoing intentional conduct of Defendants that is wasting or otherwise threatening the assets of MGF.

## IMMEDIATE APPOINTMENT OF A RECEIVER OF MGF IS NECESSARY TO PRESERVE AND PROTECT THE BUSINESS INTERESTS AND ASSETS OF MGF AND TO PREVENT IRREPARABLE INJURY

Missouri Revised Statute § 515.500 *et seq*. and Missouri Rule of Civil Procedure 68.02 allow for the appointment of a receiver when "necessary to keep, preserve and protect any business interest or property, including money or other thing deposited in court or the subject of

1

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

a tender . . . ." MO. S. CT. R. 68.02(a) (2016); *see also* MO. REV. STAT. § 515.510.1 (2016).  In particular, MO. REV. STAT. § 515.510.1(12) allows for the appointment of a receiver to "prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property."  MO. REV. STAT. § 515.510.1(12).

Regarding the matters before the Court, Judge Cordonnier already ruled that a receiver should be appointed for MGF at the individual defendants' expense for the reasons more fully described below (including misconduct by the Defendants).  In addition, new information regarding Defendants' ongoing conduct, and blatant and intentional disregard for Meadowfresh's rights as the majority member of MGF, necessitates and justifies immediate entry of the proposed Order.  Specifically, the Court should immediately appoint a general receiver for MGF to prevent further intentional or unintentional waste of MGF's assets because such waste has caused, is causing, and will continue to cause irreparable injury to Meadowfresh with respect to MGF's business and property and Meadowfresh's interest in said business and property.  *See* MO. REV. STAT. § 515.515.  Defendant's blatant, intentional, and malicious actions which form the basis for the immediate need for appointment of receiver include, but are not limited to:

1.  As already determined by Judge Cordonnier, misrepresentations to the Court, under oath, regarding Defendants' intent to refinance obligations of MGF and actions concerning the preservation of MGF assets;

2.  Documented extreme waste of MGF assets by Defendants leading up to the jury verdict (and subsequent entry of judgment) in favor of Meadowfresh and John "Jock" Fulton against Defendants;

2

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

3. Establishment and use of a shell company ("All American Cattle Leasing, LLC") to undercapitalize MGF in an attempt to deprive Meadowfresh and Mr. Fulton of creditors' rights with respect to MGF ;

4. Defendants' illegal, blatant, and intentional conduct to deprive Meadowfresh of its membership rights in MGF has continued unabated since the jury verdict and judgment referenced above. Defendants' actions include documented post-judgment ongoing waste and transfer (and potential transfer) of MGF's assets;

5. Defendants' purposeful refusal to provide Meadowfresh, as the majority member of MGF, with access to any financial information whatsoever since the parties' jury trial concerning MGF, including MGF business and financial records, books and accounts, assets, liabilities and business decisions related thereto;

6. Repeated threats by Defendants that Curtis Hall will cease management of daily operations of MGF (which would be catastrophic to the dairy cattle and the dairy farm operation as a going entity);

7. Secretive and duplicitous attempts by one or more Defendants to profit from a potential sale of MGF assets;

8. Post-judgment encumbrance of MGF assets, ultra vires, for the specific purpose of depriving Meadowfresh of its ability to satisfy the judgment entered against MGF and Defendants; and

9. Threatening foreclosure on MGF's assets so as to deprive Meadowfresh of its judgment creditor and membership rights with respect to MGF.

For these reasons, as more fully set forth and described below, the Court should immediately appoint a general receiver for MGF.

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

## GENERAL AND PROCEDURAL BACKGROUND

**General Background**

This case initially stemmed from Defendants' illegal and malicious efforts to improperly kick Jock Fulton out as Manager of MGF, kick Meadowfresh out as the majority member of MGF, and to illegally and maliciously retaliate against Mr. Fulton (for his efforts to vindicate his rights through a lawsuit) by instigating false criminal charges against him. Specifically, in early July 2015, Defendants lied to Mr. Fulton about a meeting at which they conspired to illegally remove him as the Manager of MGF. After the Defendants were unable to accomplish their malicious objectives via their illegal attempt to kick Mr. Fulton out as the Manager of MGF, Defendants conspired and falsified, altered, and destroyed various corporate records in an attempt to manufacture evidence of the purported removal of Meadowfresh as the majority member of MGF (as opposed to only trying to remove Mr. Fulton as the Manager of MGF). Thereafter, Defendants conspired and took further actions of instigating criminal charges against Mr. Fulton based on admittedly false and incomplete information given to authorities and setting up the separate shell company, AACL, to *admittedly* begin diverting assets through the shell company to avoid capitalizing MGF (which was a named defendant in Meadowfresh's lawsuit and is now a judgment debtor to Meadowfresh and Mr. Fulton).

After a two week trial regarding Defendants' misconduct, a jury returned verdicts in favor of Meadowfresh and Jock Fulton finding Defendants liable on all claims of Meadowfresh and Mr. Fulton's submitted to the jury (including malicious prosecution, breach of contract, civil conspiracy, and tortious interference), finding in favor of Meadowfresh and Mr. Fulton on all of Defendants' counterclaims, and awarding Meadowfresh and Jock Fulton $7,305,000 in compensatory and punitive damages against Defendants. The jury also found that Defendants'

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

shell company, All American Cattle Leasing, LLC, was a sham and pierced the corporate veil as to that company. The jury's verdict is now reduced to judgment in the form of the Amended Judgment attached as **Exhibit B**.

Shortly before the two week jury trial, the Court (Judge Cordonnier) granted Meadowfresh's second motion for appointment of receiver of MGF. *See* June 16, 2017 Docket Entry, attached as **Exhibit C**. The bases for the grant of the Motion were numerous, including Defendants' blatant misrepresentations to the Court under oath at a hearing regarding MGF debt and their intentions to refinance that debt[1]. Those bases are set forth in Meadowfresh's Second Motion for Appointment of Receiver, attached as **Exhibit D**, and in more detail below:

**Procedural Background**

*The First Motion for Appointment of Receiver.*

On or about November 29, 2016, Meadowfresh filed a motion for appointment of a receiver for MGF due to Defendants' failure to protect Meadowfresh's ongoing financial interests in MGF. Part of Defendants' actions in this regard included Defendants' failure to satisfy outstanding obligations of MGF, including mortgage obligations to Arvest Bank. On or about December 6, 2016, the Court held a hearing regarding various motions, including the First Motion (the "Motion Hearing"). During the hearing, Defendant Curtis Hall (also a member and purported manager of MGF) testified under oath and represented to the Court that MGF was in

---

[1] The Amended Judgment, as entered by Judge Cordonnier, specifically notes that:

"The remaining Counts of Plaintiffs' Fifth Amended Petition were reserved for determination by the Court after the jury trial, and were severed into a separate action pending in this Court, including Counts II (for judicial dissolution of Maple Grove Farms, LLC) and XIV(action for accounting), as well as Plaintiffs' motion for appointment of a receiver which the Court sustained on or about June 16, 2017."

Amended Judgment, Exhibit B.

5

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

the process of refinancing the debt owed to Arvest Bank and that the process would take approximately three (3) weeks.

Specifically, Mr. Hall testified under oath as follows:

a. [By Mr. Glass] Q: "What plan do you and the other remaining members of Maple Grove have to solve this problem with [Arvest] bank?
A: "We've approached another banking establishment and we are going to refinance."

Transcript of December 6, 2016 Motion Hearing ("Hearing Transcript"), pg. 40, lines 8-12.

b. [By Mr. Sappington] Q: "You talked about the Arvest situation and you said you have a plan in place to refinance. Did I understand that right?"
A: "That's correct."
Q: "Has the refinancing been done?"
A: "No, it has not. But a letter of intent has been sent to Arvest."

Hearing Transcript, pg. 46, lines 14-20.

c. [By Mr. Sappington] Q: "If you are not a guarantor of all four [Arvest] loans, would you be willing to become a guarantor in order to extend a loan from Maple Grove Farms?"
A: "Well, we're not looking at extending the loan. We're looking at refinancing."

Hearing Transcript, pg. 48, lines 17-21.

Defendants' representations that they were refinancing the Arvest loans was material to the issues raised in the First Motion in that a refinancing of the MGF debt would eliminate Meadowfresh as a guarantor of the MGF debt and prevent default by MGF. On the basis of these representations made by MGF's representative, the Court denied the First Motion. In so ruling, the Court admonished Defendants that a failure to refinance the Arvest obligation would result in the appointment of a receiver for MGF.

*Defendants' Representations to the Court were False in that Defendants Did not Refinance the Arvest Debt and had no Intent to do so.*

6

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

For more than approximately four (4) weeks after the Motion Hearing, between December 6, 2016 and January 9, 2017, Defendants failed to provide any notice to Meadowfresh Plaintiffs regarding the status of their efforts to refinance MGF's obligations to Arvest Bank. On January 9, 2017, Meadowfresh received a Notice of Default from Arvest Bank. According to Arvest's Notice of Default, MGF owed Arvest $2,106,392.94, plus attorneys' fees and costs, which sums were immediately due. Further, Arvest notified the parties that the last day for payment of MGF's obligation was January 20, 2017.

After receiving Arvest's Notice of Default, Meadowfresh, through counsel, sent correspondence to Defendants' counsel on January 10, 2017 inquiring about the status of MGF's efforts to refinance the Arvest debt as represented to the Court by Defendant Hall at the Motion Hearing. Defendants' counsel then represented to Meadowfresh's counsel during a telephone conversation that a refinancing was set to close on January 12, 2017.

On January 16, 2017 and January 19, 2017, Meadowfresh once again sent correspondence to Defendants' counsel asking about the status of Defendants' purported efforts to refinance MGF's obligations to Arvest Bank. However, Defendants' counsel provided no verification of refinancing as represented by Defendants at the Motion Hearing.

*Instead of Refinancing the Arvest Debt, as expressly represented to the Court under Oath, Defendants used a Shell Company to Shuffle Assets and Liabilities of MGF to the Detriment of Meadowfresh.*

Eventually, in interrogatory answers dated March 14, 2017, Defendants revealed to Meadowfresh for the first time information about a shell company called All-American Cattle Leasing, LLC ("AACL") created by the individual Defendants almost a year earlier (on January 19, 2016). Moreover, Defendants failed to disclose any information regarding AACL to Judge Cordonnier at the December 6, 2016 hearing. According to deposition testimony of Curtis Hall

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

(deposition taken on May 16-17, 2017 in his individual capacity and as a corporate representative of MGF), the only members of AACL are the individual defendants, in the exact same membership percentages as their current memberships in Maple Grove Farms (after purportedly kicking Meadowfresh out as the majority member of Maple Grove and unilaterally redistributing Meadowfresh's membership interest among the individual defendants, including giving Defendant Kyle Bounous a new 25% membership interest in Maple Grove for no consideration/capital contribution). Mr. Hall also confirmed during his deposition that AACL has never held a meeting or membership vote, has no corporate records beyond corporate formation documents, has no business or agreements other than with MGF, has the same counsel as MGF, has the manager as MGF, has no assets other than member contributions and approximately 40-50 head of livestock (discussed in more detail below), and does not observe corporate formalities. In total, as discussed more fully below, AACL owns approximately $2,750,000 in MGF debt.

According to Mr. Hall's deposition testimony, one purpose of creating AACL was to obtain a loan from Arvest to purchase more cattle for MGF since MGF could no longer obtain credit (due, at least in part, to its default on the four Arvest loans to MGF at issue). As was also confirmed during the deposition of MGF member Defendant Ted Dahlstrom, another purpose of AACL is to hold assets that would otherwise belong to MGF because MGF is involved in this lawsuit. *See* <u>Deposition of Ted Dahlstom</u>, 121:18-25, 122:1-19, 130:15-20.

In the course of disclosing the existence of AACL for the first time in March 2017, Defendants also disclosed (again, for the first time, on March 14, 2017) that they did not refinance the Arvest loans, as previously represented to the Court under oath at the Motion

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

Hearing.  Instead, contrary to the representations to the Court through sworn testimony, Defendants disclosed:

> The Arvest Bank loan was purchased by All American Cattle Leasing ("AACL"). The purchase price paid was funded, in part, by a loan to AACL from Eugene Enowski (lender) in the amount of $2,200,000.00 with interest at the rate of 5% per annum.  The Enowski loan is due, in full, on July 15, 2017.

Defendant Maple Grove Farms, LLC's Answers to Plaintiffs' Sixth Interrogatories; *see also* Assignment of Security Interest.

The loan from Mr. Enowski was made to AACL[2] because Defendant Kyle Bounous is a personal friend of Mr. Enowski.  The note evidencing the debt is dated January 11, 2017.  *See* Enowski Note.  According to the deposition testimony of Defendant Kyle Bounous (deposition taken on May 15, 2017), the members of AACL (the individual defendants) entered into the loan agreement with Mr. Enowski without the funds to pay off the Enowski loan in 6 months.

After their disclosures regarding the purchase of the MGF loans from Arvest Bank, Defendants further disclosed, again contrary to the testimony under oath at the prior Motion Hearing before Judge Cordinnier, that *they never even applied to refinance the Arvest loans*. *See* Defendant Maple Grove Farms, LLC's Answers to Plaintiffs' Sixth Interrogatories, ## 2-3.

In purchasing the loans from Arvest, Defendants' shell company AACL acquired the guaranties that secured the Arvest loans, including the Meadowfresh guaranty.  But for the jury's verdict declaring the guaranties of Meadowfresh and Jock Fulton to be extinguished because of Defendants' bad faith and malicious actions, Defendants would own those guaranties, having

---

[2] The loan from Enowski was to Defendants' illegal shell company and not to MGF.  Defendants pledged their personal assets to secure repayment of the note given to Enowski by AACL.  Defendants, through case discovery, produced the loan documents evidencing the Enowski note and their personal guaranties of the Enowski loan to AACL.  As of the time of the jury trial, Defendants provided no information or documents indicating that any MGF assets were pledged to secure repayment of the Enowski loan to AACL.  Any such pledge of MGF assets to Enowski would be, at the very least, ultra vires.

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

given themselves (by purchasing the loans) the ability to have MGF default on the loans by failing to make any loan payments and to foreclose on the loans. Defendant Ted Dahlstrom even went so far as to expressly testify in his deposition that part of the purpose of purchasing the Arvest loans (as opposed to refinancing the debt or paying the loans off, and therefore extinguishing the Meadowfresh guaranty) was to make sure that the Meadowfresh guaranty survived and Defendants purportedly have the ability to foreclose on the loans (or otherwise pursue legal action on the debt) against Meadowfresh. *See* <u>Deposition of Ted Dahlstrom</u>, 123:11-25, 124:1-3; 128:18-20. The purchase of the Arvest loans, and subsequent default by the Defendants on their own loans, also purportedly gave Defendants the ability to foreclose on MGF's property that secures the loans (including all of MGF's real property) such that the property can be acquired by Defendants' shell company AACL free and clear of any interest in the land owned by Meadowfresh.

*AACL Incurs Additional Debt on Behalf of MGF.*

After forming the shell company AACL, Defendants obtained a loan from Arvest to AACL in the amount of $200,000 to purchase more cattle for MGF. *See* <u>Debt Modification Agreement</u>. Defendants agreed (without the knowledge or consent of Meadowfresh) that MGF would pay AACL back for AACL's loan to AACL. As part of AACL's purchase of the four MGF Arvest loans, AACL also purchased the loan Arvest made to AACL. *See* <u>Assignment of Security Interest</u>.

*AACL Lends Additional Money to MGF.*

In addition, since AACL's formation, Defendants' shell company AACL loaned approximately $275,000 (as of January 19, 2017) to MGF (again, without knowledge or consent of Meadowfresh). *See* <u>AACL Loans</u>. When asked how AACL came up with the money to loan

10

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

MGF $275,000, Defendants Kyle Bounous and Curtis Hall testified that the individual members of AACL (who also happen to be the members of MGF) made capital contributions to AACL. When asked, in follow up, why the members ran their money through AACL instead of making capital contributions directly to MGF, **Defendant Ted Dahlstrom expressly admitted that the defendants did not want money in MGF because of this lawsuit**. As a result of Defendants' actions, the money lent to MGF from AACL shows as a MGF debt owed to AACL (and therefore an asset of AACL) as opposed to an asset of MGF.

MGF has not yet repaid any of the principal debt from the AACL-MGF loans back to AACL except two payments totaling approximately $5,000. According to the deposition testimony of Curtis Hall, the loans are not evidenced by any notes and there are no terms of the loans (such as interest rate, due date, or payment terms). In fact, per Mr. Hall's testimony, there is no documentation of these loans whatsoever other than a handwritten check register and the cancelled checks showing money paid to MGF by AACL.

*AACL'S Purported Lease-to-Own Agreement with MGF.*

With respect to the cattle purchased by Defendants' shell company AACL (approximately 100 head) with the funds from the $200,000 Arvest loan, AACL and MGF purportedly entered into a lease-to-own agreement (which is unsigned and undated). *See* <u>Lease</u>. Again, this occurred without the knowledge or consent of Meadowfresh. Under the terms of the purported Lease, MGF agreed, among other things, to pay all expenses associated with AACL's cattle. MGF also purportedly agreed to pay 100% of the proceeds from milk production from the cattle to AACL for the first year of the two year lease, and 25% of the proceeds during the second year of the lease.

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

Through January of 2017, MGF purportedly owes Defendants' shell company AACL approximately $250,000 under the Lease for the first year term of the lease only (not including any amounts owed under the agreement to provide 25% of second year revenue to AACL). However, by the deposition testimony of Defendant Hall, MGF has not paid the amounts due to AACL under the Lease and is in breach of the purported agreement.

According to Defendants, Defendant Hall is the appointed Manager of AACL. He also serves as one of the two Managers of MGF appointed after Defendants purportedly kicked Jock Fulton out as Manager of MGF on July 3, 2015. Under Mr. Hall's management, approximately 60/100 (or 60%) of AACL's cattle have died or been culled. Under the purported Lease agreement, MGF is also financially liable to AACL for loss of cattle exceeding 10%. MGF is, therefore, also in breach of the purported Lease in this respect. (Meadowfresh maintains that all of these transaction on behalf of MGF were improper and void as they were without the knowledge or consent of Meadowfresh).

In total, because of Defendants' actions as it relates to the purported Lease, MGF has purportedly incurred all the costs associated with "AACL's" cattle and owes AACL over $250,000 for those cattle. Those cattle were initially purchased for $200,000 for 100 head, yet MGF now purportedly owes AACL at least $250,000 for what are (as of August 2017) only approximately 40 head (after having paid all costs associated with the cattle as well).

AACL has made no efforts to enforce the various breaches of the Lease (breaches committed by Defendants themselves, who own both MGF and AACL, without the knowledge or consent of Meadowfresh), as confirmed in the deposition of Defendant Hall. Neither has AACL taken any action whatsoever regarding MGF's failures to make payments on the four

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

AACL loans formerly held by Arvest or pay amounts due on the loans from AACL to MGF (also confirmed by Mr. Hall in his deposition).

Given all of all these facts, Judge Cordonnier found that Defendants misrepresented to the Court both their intentions and the facts related to the First Motion and Defendants' alleged effort to refinance the Arvest loan debt. Instead of refinancing the debt (or paying off the loans), as expressly represented to the Court, Defendants instead used a shell company to purchase the loans. Part of the express and admitted purpose for acting in this manner was to ensure the continued liability of Meadowfresh for the debt (as opposed to extinguishing that liability through refinancing, as represented to the Court at the Motion Hearing). Defendants also continued to refuse to release Meadowfresh and Mr. Fulton from their guaranties of the debt (at least until the Court extinguished the guaranties by declaratory judgment) while simultaneously maintaining the position that Meadowfresh and Mr. Fulton held no membership interest in MGF and denying Meadowfresh and Mr. Fulton the ability to have any control over MGF's business and assets. In the meantime, Defendants defaulted on purported obligations of MGF to AACL (undertaken unilaterally by Defendants without the knowledge or consent of Meadowfresh), effectively giving themselves the ability to "foreclose" on MGF property and pursue legal action against Meadowfresh and Mr. Fulton for MGF's debt.

Significantly, as reflected in the Amended Judgment (Exhibit B), the jury found that AACL was, in fact, nothing more than a sham and pierced the corporate veil as to that entity.

**NEW AND ADDITIONAL BASES JUSTIFYING AND NECESSITATING IMMEDIATE APPOINTMENT OF RECEIVER FOR MGF**

Apparently undeterred by the Court's prior grant of Meadowfresh's Motion, and the jury's verdict (including significant awards of punitive damages against Defendants' for their

13

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

outrageous conduct) and subsequent Amended Judgment, Defendants continue to take illegal and malicious actions towards Meadowfresh and Mr. Fulton which justify the immediate imposition of a receiver of MGF.

**Defendants' Ongoing Intentional Waste of MGF Assets**

At the time of Defendants' actions which formed the bases for their liability for actual and punitive damages to Meadowfresh and Mr. Fulton, in approximately June and July of 2015, Mr. Fulton was the Manager of MGF's dairy farm operation. MGF had significant assets at that time, including approximately 750 head of cattle. As part of Defendants' multifarious efforts to avoid Meadowfresh's creditor rights, Defendants either allowed or intentionally caused MGF's assets to waste. As of the time shortly before the jury trial, Meadowfresh received information that Defendants allowed or caused MGF's livestock to dwindle to approximately 350 head of cattle. In addition, based on ongoing work to discover the extent of MGF's assets, Meadowfresh is now aware that Defendants have allowed or caused MGF's herd to dwindle to less than 250 head of cattle as of October 2017 (an approximate decline in the herd of 500 cattle, or ¾ of MGF's principal asset). *See* Report, attached as **Exhibit E**. Defendants, despite requests from Meadowfresh, even in case discovery, have never fully accounted for the significant loss of MGF assets.

**Defendants' Purposeful Refusal to Provide Meadowfresh with Business and Financial Information of MGF**

Through case discovery leading up to the Judgment against Defendants, Defendants failed and refused to provide Meadowfresh (the majority member of MGF) with a proper and full accounting/explanation of MGF's assets. In addition, Defendants' willful refusal to provide financial information regarding MGF to Meadowfresh continues (post-trial) to this day.

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

Attached as **Exhibit F** is correspondence from Defendants' counsel in which counsel purposefully refuses to provide financial information regarding MGF to majority member Meadowfresh.

**Defendants' Failure to Include Meadowfresh in MGF Information and Significant Business Decisions**

Within the last few weeks, counsel for Meadowfresh learned that the insurance covering MGF was about to lapse. Meadowfresh's counsel emailed Defendants' counsel requesting communication and agreement on renewal of coverage for MGF. Defendants' counsel failed to even communicate, much less work toward an agreement, with Meadowfresh regarding coverage for MGF. On October 26, 2017, Meadowfresh received information from the insurance broker providing services to MGF that insurance coverage for MGF would lapse as of October 27, 2017 for non-renewal. Meadowfresh's counsel immediately contacted Defendants' counsel and demanded that coverage for MGF not lapse. In response, Defendants' counsel stated that he did not believe there would be a lapse in coverage, and that "as a courtesy" he would let Meadowfresh know of future coverage.

Defendants' counsel refused, and still refuses, to even engage in discussions about the type, cost, and source of any insurance coverage for MGF. Instead, Defendants, in this and other instances, continue to unilaterally and secretly make significant business decisions without the knowledge or consent of majority member Meadowfresh. In fact, Defense counsel has expressly taken the position that Meadowfresh is not entitled to any information regarding MGF, and purposefully refuses to provide any such information or cooperate with Meadowfresh in any regard whatsoever. Even to this day, despite the offer of "courtesy", Defendants have not provided proof of continued insurance coverage to Meadowfresh. To the extent there is

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

continued coverage, Defendants failed and refused to include Meadowfresh in the decision making process regarding the type and scope of coverage despite Meadowfresh's status as majority member and a judgment creditor of MGF.

**Defendants have made repeated threats that Curtis Hall will cease management of daily operations of MGF (which would be catastrophic to the dairy cattle and the dairy farm operation as a going entity)**

Since the inception of MGF, Defendant Curtis Hall has been the daily operations manager of the dairy farm. During trial, Defendants elicited testimony that Mr. Hall is critical to the operation of the dairy farm, including the required milking of MGF's dairy cattle 2-3 per day, 365 days a year. The herd's health, and the dairy business itself, are entirely dependent on having the cattle milked every day.

Despite the fact that Defendant Hall has been the operations manager at MGF from the business' inception, and Defendants clearly understand that daily milkings are critical to MGF, Defendants have repeatedly threatened, post-judgment, to walk away from operating the business. In response to these repeated threats, Meadowfresh insisted on appointment of a receiver and immediate sale of MGF's assets to prevent the devastating waste that would occur if Defendants carried out their threats. Then and only then did Defendants agree to continue operating the farm.

Defendants' threats and tactics, at best, demonstrate their lack of concern for the MGF. And, Defendants' actions are particularly egregious in light of the fact that they have simultaneously insisted that the farm be sold as a going concern (since it impossible for the parties to continue in business together) yet refused to cooperate with Meadowfresh in any manner whatsoever, have made no good faith efforts whatsoever to effectuate the sale of MGF,

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

and have taken the other actions set forth in this Motion (such as attempting to engage in more self-dealing, as set forth in more detail below).

While Plaintiffs obviously cannot (and have no desire to) force Defendant Hall to continue taking care of MGF's assets, Defendants' repeated threats demonstrate their lack of good faith and concern regarding the operations of MGF, and the need for immediate appointment of a receiver of the business.

**Defendant's Secretive and Deceptive Attempts to Profit from a Sale of MGF to the Exclusion of Meadowfresh's Rights and Interests**

In addition to the above-described actions, Meadowfresh recently learned of Defendants' secretive and deceptive attempt to earn commissions on a sale of MGF without informing Meadowfresh (and, apparently, other members of MGF) of the same. Specifically, Defendants' counsel recently engaged in discussions with Meadowfresh's counsel in an attempt to reach an agreement concerning the sale of MGF as a going concern. Part of the reasoning/justification for a potential sale of MGF is that, given Defendants' illegal and malicious actions and misconduct (as evidenced by the jury verdicts and Amended Judgment), and the contentious nature of the ongoing litigation between the parties, it is impossible to continue MGF's business. In the course of trying to reach an agreement regarding the sale of MGF, Defendants represented to Meadowfresh that there is an unidentified potential purchaser of MGF (that Defendants intentionally refuse to identify despite requests from Meadowfresh) who is willing to offer $3.3 million to buy MGF. Defendants' counsel requested that Meadowfresh agree to having an undisclosed and unidentified real estate agent show MGF for a 6% commission (which, based on the hypothetical offer of $3.3 million, would total $198,000 in commissions).

17

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

Initially, Defendants' counsel merely stated that the proposed agent worked for Remax and provided Meadowfresh with a blank form (attached as **Exhibit G**) for signature and agreement as to the retention of an agent for the possible sale of MGF.  Only after being pressed for information regarding the identities of the potential buyer and the proposed real estate agent did Defendants' counsel disclose that Defendant/Judgment debtor Kyle Bounous' wife, Rhonda Bounous, is the Remax real estate agent Defendants proposed to receive the commissions.  *See* Real Estate Agent Correspondence, attached as **Exhibit H**.  Moreover, Meadowfresh later learned, through discussions between counsel for Meadowfresh and separate counsel for the Dahlstrom Defendants, that even the Dahlstroms had not been informed of the plan to involve Defendant Kyle Bounous' wife in the proposed listing or sale of MGF or the plan to pay Mrs. Bounous commissions related to the proposed sale.

In addition to the attempted self-dealing described above, Defendants have made it clear that the proceeds from any sale of MGF will be used to pay themselves instead of their judgment creditors.  Specifically, through a series of illegal and deceptive maneuvers designed to maliciously defraud Meadowfresh and Mr. Fulton, Defendants purchased the loans MGF used to finance its operations.  Defendants' efforts formed part of the bases for the piercing of the corporate veil of Defendants' shell company AACL and Defendants' liability to Meadowfresh and Mr. Fulton for punitive damages.  Despite their malicious and illegal and deceptive maneuvering, Defendants, undeterred, continue to claim entitlement to the proceeds from a sale of MGF – in addition to commissions from the sale as well.

18

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

**Defendant's Post-judgment assignment of MGF assets to a friend for purposes of Defrauding Judgment Creditors Meadowfresh and Mr. Fulton**

During the course of the litigation leading up to the two week jury trial, Meadowfresh learned that Defendants, using their shell company AACL, purportedly borrowed $2.2 million from a personal friend of Defendant Kyle Bounous, Eugene Enowski. Defendants then used those borrowed funds, contrary to the express representations to Judge Cordonnier under oath, to purchase MGF's loans from Arvest Bank in the name of their shell company. Defendants purchased the loans from Arvest, as opposed to simply paying off the loans or refinancing the debt, to manufacture for themselves the rights to foreclose on MGF's assets in the name of AACL (thus depriving MGF of any assets that could be used to satisfy any judgment entered in favor of Meadowfresh and Mr. Fulton) and to pursue any debt collections against Meadowfresh and Mr. Fulton.

At the time of the purported loan to AACL from Defendant Bounous' friend, Mr. Enowski, AACL did not have the assets or ability to repay the purported loan. Despite this fact (which was admitted in deposition testimony), Defendants agreed to provide a note to Mr. Enowski pledging repayment of the $2.2 million loan **in six months**. Based on documentation produced by Defendants in case discovery, Defendants purportedly pledged their personal assets (only - as opposed to pledging any assets of MGF) to secure repayment of this purported loan (again, giving Defendants the ability to default on the loan and have their friend take possession of their collateral making it unavailable for purposes of satisfying a judgment entered against Defendants and in favor of Meadowfresh and Mr. Fulton).

Since the Amended Judgment, Defendants have maintained, through communications from their counsel, that there is a third-party who is a secured creditor of MGF. Despite repeated

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

requests from Meadowfresh, Defendants have failed and expressly refused to provide any documentation of any secured creditor of MGF. However, Defendants recently identified Mr. Enowski as being the person Defendants assert has a security interest in MGF's assets (despite refusing to provide Meadowfresh any documentation of such an interest, and despite never once informing Meadowfresh that such an interest would be granted or requesting or receiving consent from Meadowfresh to grant such an interest). Specifically, Defendants recently represented to the Court, in a pleading, that Mr. Enowski received as assignment of a security interest in MGF's assets. To the extent Defendants are not, once again, lying to the Court, pledging any of MGF's assets to Mr. Enowski is a gross and outrageous fraudulent transfer done ultra vires.

**Defendant's Threat of Foreclosure on MGF's Assets**

Defendants' purposeful efforts to defraud Meadowfresh and Mr. Fulton continue to this day. Not satisfied with the illegal and outrageous conduct set forth above, (including Defendants' refusal provide Meadowfresh any information or documentation regarding the finances or assets of MGF), Defendants' counsel very recently informed Meadowfresh's counsel, on October 26, 2017, that there will be a foreclosure on MGF's assets. As MGF had no secured creditors (other than Defendants themselves through their illegal shell company) before the jury trial between the parties, the only possible current secured creditors of MGF are Defendants themselves, Mr. Enowski (assuming Defendants illegally assigned a security interest to Mr. Enowski ultra vires), or some other unidentified third-party (which, again, would only have a security interest by virtue of an ultra vires action by Defendants post-judgment). Regardless of the identity of this alleged secured creditor, Defendants have, once again, demonstrated their unabated and unabashed contempt for the Court and the rights of Meadowfresh and Mr. Fulton

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

through continued illegal actions specifically designed to defraud MGF's creditors.  As has been obvious throughout the litigation between the parties, Defendants are still planning to execute their plan, set up through their illegal actions set forth herein, to defraud Meadowfresh and Mr. Fulton by taking this additional effort to remove assets from MGF's name and place the assets in the name of their shell company, their own names, or the name of their friend or friends.  The time has come to put a stop to Defendants' outrageous conduct, and the way to do that is to immediately appoint a receiver.

**WHEREFORE** Meadowfresh respectfully requests entry of the proposed Order, attached as Exhibit A, pursuant to Rule 68.02 and MO. REV. STAT. § 515.500, and such other and further relief the Court deems proper and just.

**SANDERS WARREN RUSSELL & SCHEER LLP**

*/s/ S. Jacob Sappington*

| | |
|---|---|
| S. Jacob Sappington | #51810 |
| Randy P. Scheer | #37214 |
| Kayla M. Campbell | #67035 |

1949 E. Sunshine Street, Suite 2-102
Springfield, Missouri 65804
Telephone:  (417) 281-5100
Facsimile:   (417) 281-5199
E-mail:  j.sappington@swrllp.com
r.scheer@swrsllp.com
k.campbell@swrllp.com
**ATTORNEYS FOR PLAINTIFF**

21

Electronically Filed - Greene - October 30, 2017 - 02:58 PM

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this original document was signed by the preparing attorney and will be maintained by the filer for a period not less than the maximum allowable time to complete the appellate process.

The undersigned hereby certifies that a signed copy of the above document was sent this 30th day of October, 2017, via ( ) U.S. Mail, postage prepaid, ( ) facsimile, ( ) electronic transmission, (X) e-mail, and or ( ) hand delivery, to:

Harold F. Glass, #19424
MILLINGTON, GLASS & LOVE
1901 S. Ventura, Suite A
Springfield, Missouri 65804
Telephone:     417-883-6566
Facsimile:      417-883-6689
E-mail:  tglass@springfieldlaw.com
**ATTORNEYS FOR DEFENDANTS**

Dan Nelson, #31486
LATHROP & GAGE LLP
910 E. St. Louis Street
Suite 100
Springfield, Missouri 65806
Telephone: 4187-886-2000
Facsimile: 417-886-9126
E-mail: dnelson@lathropgage.com
**ATTORNEYS FOR DEFENDANTS
TED DAHLSTROM AND CAROL
DAHLSTROM**

*/s/ S. Jacob Sappington*
Attorney